## Weekly Advance Abstract Opinions
## CURRENT U. S. DISTRICT COURTS CASES
### Originating in Ohio

No. 22
UNITED STATES v. GUTHRIE
U. S. District Court, Southern District, W. D. No. 3161,
Sept. 16, 1922

**INTOXICATING LIQUORS—Revenue taxes and penalties imposed for illegal manufacture or sale, not for possession.**
PECK, J.:

Epitomized Opinion.

Heard on demurrer to petition.

A petition by the U. S. for taxes and penalties claimed under the Volstead Act, against one previously convicted of having "had in his possession for sale intoxicating liquors" and seeking the enforcement of a lien asserted by the revenue collector, against the real estate of the said offender, for such tax, not averring either manufacture or sale, because defendant, fails to state a cause of action. Section 35 of said act, authorizing the tax and penalty only upon evidence of illegal manufacture or sale of intoxicating liquor, and does not warrant such assessment against one merely having possession, although for the purposes of sale. Demurrer sustained.

**Attorneys**—Thos. H. Morrow, U. S. Atty., for plaintiff; M. C. Sykens, Cincinnati, for defendant.

No. 23
TRAPP v. B. & O. RY.
U. S. District Court, Northern District, No. 11507
Sept. 27, 1922

**FEDERAL JURISDICTION, EMPLOYERS' LIABILITY ACT—(1) Generally is in district of defendant's residence—(2) May be in any district where defendant operates its road—(3) Not dependent on concurrent jurisdiction of state courts within the district.**

WESTENHAVER, J.:

Epitomized Opinion.

For full opinion see 283 Fed. Rep., 655 (Nov. 30, 1922)

The plaintiff in this action is a citizen and resident of Indiana. Defendant is a Maryland corporation, and a citizen and inhabitant of that state. Part of defendant's railroad is operated by it in Ohio. Plaintiff was injured at Garrett, Ind., while in the employment of defendant, damages for which this action was brought and defendant pleaded specially and moved to dismiss for want of jurisdiction.

1. Under Sec. 51 U. S. Judicial Code (Comp. Stat. § 1033), when the jurisdiction of the district court is invoked in an action not local in its nature, on the ground alone of diversity of citizenship, it must be brought in the district of the residence of either the plaintiff or defendant. But if there be an additional ground, the action must be brought in the district of which the defendant is an inhabitant. It is not sufficient that plaintiff may reside in or be an inhabitant of the district in which the suit is brought, or that the defendant may be found or can be served in the district. Further, if the defendant is a corporation, within the meaning of Sec. 51, it resides in and is an inhabitant of that state or district only, under which it has been created and where is established its principal office and place of business.

2. Under the Federal Employers' Liability Act, Sec. 6, an action may now be brought in any one of four places, (1) the district of the residence of defendant; (2) the district in which the cause of action arose; (3) the district in which the defendant shall be doing business at the time of commencing the action; (4) in any state court which by the laws of the state was cognizance of the cause of action and may acquire jurisdiction of the parties. An injured employee may thus bring his action in any one of the three districts of the United States, and this privilege is not controlled by or dependent upon the jurisdiction conferred by a state upon its local courts.

If the defendant was doing business in the northern district of Ohio at the time this action was commenced, the injured employee may select this district as the one in which to bring his action.

3. The jurisdiction of the federal court in this case does not depend upon there being state courts within the district that have concurrent jurisdiction, notwithstanding the amendment to 11273 GC.

**Attorneys**—Payer, Winch, Marshall & Karch, Cleveland, for plaintiff; Tolles, Hogsett, Ginn & Morley, for defendant.

## TEETH OF PROHIBITION LAW

Judge W. H. S. Thomson, in the United States District Court at Pittsburg, recently gave an impressive reminder that the prohibition law has teeth. A man convicted of violating it, and who, according to the testimony, boasted that he could get police protection, was fined $2,000 and sentenced to serve 18 months in the Federal penitentiary at Atlanta. Coming at a time when Pittsburg is declared "one of the wettest spots in the country" and when there is talk that some of the big bootleggers will soon be in the net, the sentence is all the more impressive. It would not take many penalties like the one in this case to throw the fear of the law into those who would ignore the Eighteenth Amendment.

The chief authorities of the city also should give some attention to the boasts of bootleggers that they can get police protection. Here is a demand for the protection of the honor of the department and the honest policemen as well as for punishing any officer betraying his trust.

No matter what may be thought of the principle of prohibition, if this law is permitted to be trampled upon every other law will be weakened accordingly through loss of respect for the statutes in general.

There could be no more contemptible offender than a public officer who, after taking oath to uphold the Constitution, goes into partnership with the bootleggers who are warring against the law of the land. Let it be hoped that every such criminal will be found and that exemplary punishment will be given him.—Pittsburg Post.

### FOREWARNING TO LAWYERS

The Cleveland Bar Association has issued a warning to members of the Bar, in Cleveland and the State of Ohio, to be on their guard against a stranger, who is attempting to defraud lawyers.

The man operates in this way:

He first visits a bank several times and on each occasion talks with someone in the bank about his plan to engage in business in Cleveland. He then displays accounts that he has for collection. Finally, the stranger asks the banker to give him the name of some reputable lawyer in Cleveland on whom to call to make collections. The banker, having no cause to doubt the stranger's word, gives him the name of some lawyer. The stranger then calls upon the lawyer and exhibits an account, generally secured by note, on someone in another city. The stranger states that the debtor is able to pay and undoubtedly has deferred payment in order to cause him expense. The stranger says that inasmuch as the collections can be made by correspondence, the attorney fee ought to be small.

Two Cleveland lawyers took notes from this stranger for collection, one for four thousand ($4,000) dollars, the other one for thirty-five hundred ($3,500) dollars. Both lawyers wrote to the debtors, one in New York City and the other in Louisville, Kentucky.

New York's draft came back from the debtors who expressed indignation that the creditor should put the claims in the hands of a lawyer and expressed a hope that the lawyer would charge the creditor a good stiff fee. Both drafts were deposited, but luckily, intervening circumstances caused the lawyers to not check on the drafts and make distributions to the creditors until after both drafts had gone through the regular channels. Both drafts were fraudulent.

It was, of course, the stranger's purpose to call on the lawyer, shortly after the drafts had been mailed and deposited, in the hope that the lawyers would make distributions to him before the lawyer learned that the drafts were fraudulent.

Undoubtedly the stranger, the creditor, and the debtor are one and the same person.